FT. WORTH & D. C. RY. CO. v. HART.
(No. 814.)

(Court of Civil Appeals of Texas. Amarillo. June 19, 1915.)

1. RAILROADS ☞345—CROSSING ACCIDENTS—DISCOVERED PERIL.

A complaint, alleging that the defendant railway company neglected to post a switchman on the end of its freight cars approaching the crossing, so that if any one was attempting to cross, the switchman could stop the cars by the use of brakes, and that for such reason plain-

tiff's automobile was struck and injured, does not raise the issue of discovered peril.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1113–1116; Dec. Dig. ☞345.]

2. RAILROADS ☞327—CROSSING ACCIDENTS—EVIDENCE—PHYSICAL FACTS.

Where the driver of plaintiff's automobile admitted that though he had a clear view he did not stop, look, or listen, and did not look at the tracks until within 25 feet thereof, and it appeared he was struck by cars which were kicked from some distance down the track, he was, as a matter of law, guilty of contributory negligence, though he testified to seeing the engine standing quiet on the tracks before he attempted to cross.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043–1056; Dec. Dig. ☞327.]

3. APPEAL AND ERROR ☞1177—DETERMINATION—REMAND.

In an action for injuries to an automobile resulting from a crossing collision, where there was some testimony that defendant's brakeman was on the cars and saw the perilous position of the motor and its occupants in time to have slowed the speed of the cars, which had been kicked toward the crossing, a judgment for plaintiff will not be reversed without remand, though it conclusively appeared the driver of the motor was guilty of contributory negligence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4604, 4606–4610; Dec. Dig. ☞1177.]

4. RAILROADS ☞313—CROSSINGS—SIGNALS.

Under Rev. St. 1911, art. 6564, declaring that the whistles shall be blown and the bell rung at a distance of at least 80 rods from the place where the railroad shall cross any public road or street, and such bell shall be kept ringing until the train shall have passed, it is not necessary for those in charge of an engine engaged in switching to give the crossing signals before kicking cars across a street, where the engine and cars were not over 50 or 100 feet away.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1002; Dec. Dig. ☞313.]

Appeal from Wichita County Court; C. B. Felder, Judge.

Action by Leona Hart against the Ft. Worth & Denver City Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Thompson & Barwise, of Ft. Worth, and Carrigan, Montgomery & Britain and F. S. Jones, all of Wichita Falls, for appellant. W. F. Weeks, of Wichita Falls, for appellee.

HENDRICKS, J. The appellee, Hart, sued the appellant railway company for damages to an automobile, alleged to have been sustained at a railway crossing in the city of Wichita Falls, asserting that the employés in charge of the engine and cars causing the injury negligently failed to give any signals or warning of the approach to said crossing.

[1] The jury assessed damages in favor of appellee in the sum of $571, and the appellant assigns that the trial court erred in instructing the jury on "discovered peril," for the reason that plaintiff's pleading did not present such an issue for consideration. This assignment will be sustained; there is no support whatever in the pleading for the

charge of the court on the particular issue. Sanches v. Railway Co., 88 Tex. 118, 30 S. W. 431; Railway Co. v. Powell, 41 S. W. 696; Railway Co. v. Knox, 75 S. W. 543; Townsend v. Electric Co., 154 S. W. 629.

The appellee, in controverting appellant's assignment as to the failure of pleading upon the particular question, cites that part of the petition wherein it is alleged, in effect, that the railway company had neglected to post a switchman on the end of its freight car approaching the crossing, so that if any one was attempting to go upon said crossing, said switchman could stop the car by the use of the brakes on same. "Discovered peril" clearly does not come within the purview of such a pleading.

[2] The appellant railway company also assigns that Walker, the driver of the automobile, was conclusively guilty of contributory negligence. Walker testified that he did not stop, look, and listen, when approaching the crossing, but that when he got within 20 or 25 feet of the track he looked and noticed the engine standing still within 50 or 55 feet from him, without any smoke issuing from the smokestack, and that he did not hear the blowing of any whistle or the ringing of any bell. The engine, upon this particular occasion, had shoved some cars with a "kick" towards the crossing, and Walker, the driver of the auto, testified that he neither saw the movement of the engine, nor of the two or three cars which had been disconnected from the same, until he heard a jar and some one on foot ran around one end of the cars and "hallooed." He said:

"I never noticed the engine doing anything; only it kicked the cars. It seemed like a jar, and here come the cars. If those cars had been rolling when I saw them, I could have stopped."

This driver was acquainted with this crossing, and from the time he left the corner of the building known as the Last Chance Saloon, a distance of from 65 to 70 feet from the crossing, there was an unobstructed view of the track and of the particular engine and cars kicked by the same at that time. All the other testimony, including that of appellees, was that the driver of this auto did not look until just as he got to the crossing, saw the danger, and turned his auto down the track to avert it. If he looked within 25 feet of the crossing and saw no cars moving, it is a fantasy, born of the stress of the conditions surrounding him. It is entirely improbable that the engineer could have started his engine from a dead stop, produced the kick, and the resultant momentum sufficient to have met the auto at the crossing, considering the distance indicated in this record each had to go. It is, of course, generally inappropriate to reduce matters of this kind to mathematics, but in this instance it is pertinently suggestive that this auto, even running at a speed of 10 miles an hour, the lowest speed with which he could be charged, would take only six seconds to run 82 feet; and all the testimony is that he never slack-ened his speed from the time he left the Last Chance Saloon until the front wheels of his car struck the crossing. For the engineer to have started his engine, and to have kicked these cars and rolled them for the distance necessary, considering the distance from the track the driver says that he looked (and even doubling the distance to 50 feet from his testimony) in connection with the lowest speed of the auto, testified to by him, the engineer, with the movement of the cars to the crossing, could not have done that required of him if his engine had been standing. An appellate court, whatever deference it may owe to a jury's verdict, is not required to go blind. The testimony of all the other witnesses—a number of them who saw the moving auto, the cars and the accident—either directly or by inference, shows that the cars which struck the auto were moving at the time Walker first looked, or could have seen. For example: J. B. Belote, one of appellee's own witnesses, who was facing the automobile as it came by the Last Chance Saloon, noting its speed, and saw the moving cars approaching the crossing, and, intently watching both, said:

"What attracted my attention to the moving cars and the automobile was I wondered if that man was going to risk his life going across that crossing and the cars in plain view of him. He never did look up the track until he got nearly to the crossing. When he left the saloon there was nothing to prevent him from looking there and seeing those cars [meaning the moving cars]."

The driver of the automobile testified that if he had noticed the cars moving when he looked, he could have stopped the auto in sufficient time to have avoided the accident. Mr. Belote said:

"If he had looked he could have seen those cars coming. He had time to stop."

We think, where the view is unobstructed, it was contributory negligence for this driver to run his auto into a moving train, whether he looked or did not look, upon all the facts presented in this record conclusively showing that the cars were moving at a time when he should have seen them in action, and that it would be the trial court's duty to so instruct the jury upon another submission upon the facts. I. & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106; Railway Co. v. Bracken, 59 Tex. 74; Boyd v. Railway Co., 101 Tex. 411, 108 S. W. 813.

[3] Appellant railway company says that if the driver of the auto was guilty of contributory negligence, this court should reverse and render the case. This we do not think should be done, in view of the testimony of Lee Oldham, James Robertson, J. E. Miller, and Callie Smith, with reference to a brakeman, Walton, on top of the end car, some of whom testified that when the cars were approaching the crossing, this employé was "hallooing" from the top of the car to the driver of the auto. Walton denied that he was on top of the car, and said that he was on the side of the end car until after the

crossing was passed. One witness, however, practically said Walton was "hallooing" when the auto was about 150 feet away, which, whatever you may think of the distance, in connection with the other testimony, may make discovered peril a jury question. It is true Walton said if he had been on top of the car when he first noticed Walker in the automobile, he could not have stopped the cars, but also said, "I might have been able to have slowed them down." The trial court's charge could probably be more aptly framed under the numerous decisions in this state on discovered peril.

[4] The trial court charged the jury that the railway company was guilty of negligence as a matter of law if its employés ran the cars across the crossing without beginning to ring the bell and blow the whistle at a distance of at least 80 rods from said crossing. What testimony we have upon this subject starts the engine and cars at a point less than 80 rods; hence statutory negligence with reference to blowing the whistle does not apply. Railway Co. v. O'Neal, 91 Tex. 671, 47 S. W. 95; Gulf, Colorado & Santa Fé Ry. Co. v. Hall, 34 Tex. Civ. App. 535, 80 S. W. 135.

The statute (Rev. St. 1911, art. 6564) says that:

"The whistle shall be blown and the bell rung at the distance of at least eighty rods from the place where the railroad shall cross any public road or street, and such bell shall be kept ringing until it shall have crossed such public road, or stopped."

Chief Justice Fisher held in the case cited (Railway Co. v. Hall, supra) that, though the start was made within less than 80 rods of the crossing, there should be a continuous warning by ringing the bell in approaching the crossing, although the statutory requirement as to the whistle did not apply, citing the cases of Railway Co. v. Bailey, 83 Tex. 19, 18 S. W. 481; M., K. & T. Ry. Co. v. Magee, 92 Tex. 619, 50 S. W. 1013, which rather sustain the ruling.

For the errors indicated, the cause is reversed and remanded.