## CHICAGO, R. I. & G. RY. CO. v. LARO.
### (No. 7363.)

(Court of Civil Appeals of Texas. San Antonio. May 13, 1925. Rehearing Denied June 10, 1925.)

Railroads ⊚⇒350(16)—Contributory negligence of wagon driver, killed at crossing, held for jury.

In action for death of driver of wagon from collision at crossing, in view of evidence as to condition of highway at crossing requiring divided attention of driver in crossing tracks, *held* that contributory negligence was for jury.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by Mrs. A. V. Laro against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

R. M. Rowland and Lassiter, Harrison & Pearson, all of Fort Worth, for appellant.

Jones, Sexton, Jones, Buck & Gibson, of Fort Worth, for appellee.

SMITH, J. The case is a simple one, involving a daylight crossing accident, in which A. V. Laro lost his life. His widow sued the railway company to recover in her own behalf and that of her two children, a boy and a girl. A jury trial resulted in a judgment in favor of the mother for $8,500, in favor of the son for $3,400, and of the daughter for $5,100, aggregating $17,000. The railway company has appealed.

Laro was traveling alone in a loaded wagon, drawn by two horses, upon a much frequented highway, which crossed the railway track from west to east, about 4 miles north of the city of Fort Worth. The highway approached the crossing from the southwest at an angle of about 60 degrees, so that the traveler thereon was facing northeast as he neared and drove upon the tracks. The train was going north, and hence approached the traveler somewhat from the right rear. If he turned his head around to the right he could have seen the train, if in sight, for a distance of 400 feet; by turning his body he could have seen still further down the track to a distance of 800 feet.

The wagon had no cover, was open, and the driver sat on a sack of grain on top of the load. He was a middle-aged man and healthy, with unimpaired vision and hearing, was of sober, steady, settled habits and manner. He was familiar with the crossing, and

of the usual passing time of the train which struck him. His team was old, plodding, accustomed to, and unafraid of, railway trains. The picture is readily visualized.

The railway track approached the crossing at a more or less declining grade, and, although it passed through a cut shortly before reaching the crossing, trains moving thereon were easily seen from the highway. At the crossing the track was elevated and rested upon a small dump. The highway was 10 to 15 feet wide at the crossing, but widened 2 or 3 feet as it receded therefrom. On both sides of the crossing ditches ran along on either side of the highway, which turned to the left just beyond the track, on the east side. The traveler would naturally keep the lay of the land in mind as he approached, passed over, and left the railway track, so as to avoid the depressions on either side, the lay of the rails, and the turn and ditches just beyond. In other words, the careful traveler would divide his attention among all the apparent dangers—the obvious depressions by the road side, the rails, the probable approaching trains, the certain turn, and ditches ahead in his own road.

No witness in the case saw the accident, or told how it occurred. The ill-fated driver never recovered consciousness after the accident. It was shown, however, or the jury was authorized to infer, that the team endeavored to swing to the left and out of the path of the oncoming train; for, when the collision occurred, the wagon and team were at a point several feet north of the center of the crossing, and so nearly clear of the engine that only the lead horse and the right side of the wagon were struck. That horse was killed; the other was not injured. Whether the horses were prompted by their own instinct to swing away from the danger, or were guided by their driver in sudden realization of his peril, is not, of course, directly shown. There is no reason, however, to resolve this doubt against the deceased in order to convict him of contributory negligence. The jury, with all the physical facts bared to them from the lips of living witnesses, evidently found otherwise, and there is nothing in the cold record of those facts to warrant this court in disturbing that finding. So much, then, for the situation, course, and conduct of the decedent.

We will now consider the acts of the railway company in the premises. Appellant does not in its brief set out the findings of the jury in full, or otherwise, but appellee summarizes those findings, as follows:

"That the crossing whistle was not sounded; that the bell was not rung for the crossing; that those in charge of the engine did not exercise ordinary care to discover Laro; that the train was negligently operated at a dangerously high rate of speed; that Laro was not guilty of contributory negligence; that the

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

train blew the whistle as it approached the crossing, but that it was blown after it passed the whistling post, and that it was not blown in time for Laro by the exercise of ordinary care to have avoided being struck by the engine; that the train was traveling 55 miles per hour; and that Laro could not have, by the exercise of ordinary care, learned of the approach of the train in time to avoid the collision."

We have very carefully reviewed the evidence, and conclude that it was sufficient to support those findings. These matters are raised in appellant's first, third, fifth, seventh, ninth, thirteenth, and seventeenth assignments of error, which we overrule. The first, thirteenth, and seventeenth assignments relate to the issue of the contributory negligence of Laro, and will be discussed further. The fourteenth assignment raises the question of excess in the verdict, but, as the jury has passed upon that issue, apparently without prejudice or passion, and as the verdict is not so large as intrinsically to warrant a presumption or raise a suspicion of improper influences or considerations, we also overrule the seventeenth assignment. No other assignments than those mentioned have been brought forward into appellant's brief, and all others are therefore deemed to be waived.

And now a word as to the issue of contributory negligence. Appellant cites and relies upon the following cases in support of its contention that the undisputed facts as a matter of law establish such negligence upon the part of the deceased traveler: Railway v. Edwards, 100 Tex. 22, 93 S. W. 106; Ry. Co. v. Price (Tex. Com. App.) 240 S. W. 524; Ry. Co. v. Gaddis (Tex. Com. App.) 208 S. W. 895; Wichita Falls R. Co. v. Emberlin (Tex. Civ. App.) 255 S. W. 796; Ry. Co. v. Singletary (Tex. Civ. App.) 251 S. W. 325; Clements v. Hines (Tex. Civ. App.) 240 S. W. 1010; Schaff v. Verble (Tex. Civ. App.) 240 S. W. 597; Ry. Co. v. Hart (Tex. Civ. App.) 178 S. W. 795.

But the cited cases are of no value here except as they state the general principles applicable to this and all similar cases. Those general principles have been stated so often as to have become axiomatic in all courts and among all lawyers. They apply in all cases of crossing accidents, and, while it is never difficult to restate and invoke them in such cases, yet when they are once invoked in a decision they constitute only the foundation of a structure which must be reared and completed with facts which are always peculiar to the given case. Such facts always vary in detail or degree, so that each decision after all becomes one of first impression. Was the crossing, or the approach of the railway thereto, open and in plain view, or obstructed and obscured from the traveler's view, and in what degree? Was it elevated or depressed, and to what extent? Easy or difficult to approach, and how much so? Was it much or little traveled? Was the highway in a level, open, safe environment, or was it rough, treacherous, or beset by pitfalls known or unknown to the traveler? One or more of these or other conditions exist in varying degree in every crossing case. They are rarely if ever alike in two or more cases. And yet in every case the questions arising from the conditions peculiar to it must be settled into ascertained facts, and not until then can they be squared to the general principles applicable to all such cases, and the case determined on its merits.

Now in this case the facts are unusual. We have stated them somewhat fully, and we believe fairly. They show the intersection of a railway by a public road, environed by conditions which presented at least slight difficulties to the traveler, who was required in the exercise of ordinary care to in some degree divide his attention among those difficulties and the more serious and imminent danger of approaching trains. In other words, he was passing through a situation requiring the use of discretion on his part. It was not a case where the traveler was confronted with no other danger or difficulty than that of an approaching train, in which case only is a court permitted to assume from undisputed physical facts that, because he deliberately walked into the single and obvious danger, the traveler is guilty of contributory negligence as a matter of law.

Whether or not the deceased wisely exercised his discretion in the situation through which he was obliged to pass is not a question for decision here. Whether he properly divided his attention among the several objects of danger, or accurately gauged those dangers, or looked down the track at the precise psychological moment—if indeed a psychological moment was ever available to him, in view of the terrific speed of the train—these questions are not now in the case. It is sufficient for this court to determine that the peculiar facts of the case called for the use of some degree of discretion by the traveler, and, when that is determined, the decision relates back to the finding of the jury, which, being supported by the testimony, must not be disturbed.

The judgment is affirmed.