**KANSAS CITY, M. & O. RY. CO. v. PERRY et al.  (No. 2828.)**

Court of Civil Appeals of Texas. Amarillo. May 11, 1927.

Rehearing Denied June 8, 1927.

**1. Appeal and error �köⁿ1002—It is not the province of the Court of Civil Appeals to decide fact issues on conflicting evidence.**

It is not the province of the Court of Civil Appeals to decide fact issues on which the evidence is in sharp conflict.

**2. Railroads �köⁿ346(6)—Presumption is not, because deceased went upon tracks, he did not look and listen for train.**

The presumption being that deceased, in going upon railroad crossing, took such precautions as were necessary for his own safety, until evidence shows that he did not do so, it is not presumed from fact that he went upon tracks in front of approaching train that he did not look and listen.

**3. Negligence �köⁿ136(10)—Question of negligence is for jury, unless there is no material conflict in evidence nor room for different inferences.**

A question of negligence dependent on evidence should not be taken from jury except where there is no material conflict, and where there is no room for different minds to draw different inferences therefrom.

**4. Railroads �köⁿ350(16)—Whether truck driver was negligent in driving upon crossing before approaching train held for jury.**

Where road at approach to railroad crossing was rough, and there was a muddy ditch or depression just above the beginning of the ascent to the tracks, and after ascent to the crossing driver was confronted with projected ends of ties and elevated rails, whether his view of the crossing was obstructed and he was negligent in driving upon the tracks in front of an approaching train was for the jury.

**5. Appeal and error ⊫ⁿ1010(1)—Finding of railroad's negligence in crossing accident, and that truck driver was not negligent, supported by evidence, is conclusive.**

In action for death at railroad crossing, where evidence of automobile driver's negligence was properly submitted to jury, finding of railroad's negligence and that driver was not negligent, supported by evidence, though conflicting, will not be disturbed.

**6. Trial ⊫ⁿ215—Trial court did not err, in charging in explanation of special issues, as defining legal terms used (Rev. St. 1925, art. 2189).**

In action for death at railroad crossing, general charge in connection with submission of special issues was not error, in view of Rev. St. 1925, art. 2189, where it was explanatory in nature or a definition of legal terms used in special issues.

**7. Appeal and error ⊫ⁿ1033(5)—Instruction that jury could not consider sorrow, mental anguish or grief of plaintiff held without harm to defendant.**

In action for death at railroad crossing, instruction that jury could not consider sorrow, mental anguish, or grief of decedent's widow held without injury to defendant.

**8. Railroads ⊫ⁿ346(5)—Railroad had burden of proof to establish contributory negligence of automobile driver killed.**

In action for death of automobile driver at crossing, court did not err in placing burden of proving contributory negligence of deceased on defendant.

**9. Trial ⊫ⁿ191(8)—Refusal of charges presenting issues of defense which assumed existence of facts held proper.**

In action for death of automobile driver at railroad crossing, refusal of defendant's charges presenting issues of defense which assumed existence of fact was proper.

**10. Trial ⊫ⁿ351(2)—Trial court, having correctly presented issues, was not required to reform defendant's special issues.**

In action for death of automobile driver at crossing, trial court, having correctly presented issues of negligence and contributory negligence, was not required to reform defendant's special issues to have them correctly present issues therein presented.

**11. Appeal and error ⊫ⁿ882(14)—Error, if any, in submitting issue covering all phases of contributory negligence was invited by defendant's request for special issue.**

In action for death of automobile driver at railroad crossing, error, if any, in submitting special issue as to whether decedent was negligent in driving his truck onto crossing under circumstances and conditions shown by evidence at time and place of collision was invited by defendant's request for submission of special issue, which presented and grouped all phases of contributory negligence.

**12. Trial ⊫ⁿ351(2)—Where submission of special issue did not prevent jury from answering other issues, no duty devolved on court to redraft defendant's issues.**

In action for death of automobile driver at railroad crossing, where submission of issue as to whether decedent was negligent in driving his truck onto crossing did not prevent jury from returning answers to other issues of railroad's negligence and decedent's contributory negligence, it devolved on defendant to tender correct issues, and no duty rested on court to reform or redraft them to make them correct.

Appeal from District Court, Knox County; J. H. Milam, Judge.

Suit by Mrs. Addie B. Perry and others against the Kansas City, Mexico & Orient Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

D. J. Brookreson, of Benjamin, and Collins, Jackson & Sedberry, of San Angelo, for appellant.

⊫ⁿFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

Jones, Buck & Gibson and R. E. Rouer, all of Fort Worth, for appellees.

RANDOLPH, J. Mrs. Perry and children filed this suit as plaintiffs against the appellant, as defendant, to recover damages for the death of J. J. Perry, the husband of Mrs. Perry and father of the other plaintiffs. On trial, judgment was rendered for the plaintiffs. The railway company brought the case to this court on appeal.

The deceased, J. J. Perry, was driving a truck and was killed by one of defendant's trains. It is impossible for us to consider, in the space of an opinion of reasonable length, all of the propositions and assignments of appellant here presented, and we will only attempt to discuss such as are of controlling force in the disposition of the appeal. The first question we shall discuss arises on the refusal of the trial court to peremptorily instruct a verdict for the defendant. The contention of appellant is that the case made by plaintiff fails to show negligence on the part of the defendant, and does show conclusively contributory negligence on the part of the deceased, which was the proximate cause of his death. We will consider these two contentions as the evidence establishes or fails to support the verdict of the jury on each, because they are so closely related as to require this.

As stated, the deceased was driving a truck, and in attempting to cross the defendant's track was killed. There is evidence that the road at the approach to the track was very rough, that there was a muddy ditch or depression in the road just above the beginning of the ascent to the track crossing, which compelled cars to go around and approach the crossing from an angle; that the ties and rails projected several inches out of the dirt of the roadbed; that, as the deceased approached the crossing, he was seen to slow down the speed of his car; that he had been running at a speed of almost 15 miles an hour, and slowed down to about 6 miles an hour; that no whistle was blown; and that the bell was not rung within the distance from the crossing required by law. It is true that two witnesses for the plaintiff testified that they did not hear any whistle, that they were accustomed to hearing the whistle as the trains passed over the road; while other witnesses testified positively that the whistle was blown and the bell was rung. There is evidence both for and against the fact that there were small mesquite trees along the right of way, which to some extent obstructed the view of an approaching train; that the train which killed deceased was composed of an engine and caboose, and was not running on schedule time; that the deceased was familiar with the crossing, using it often.

[1] It is true that there is a sharp conflict in the evidence on every issue, but it is not our province to decide such issues; the jury has done so. The fact is that the photographs taken, for instance, show that there is nothing to obstruct the view of the approaching train, that these photographs were taken the day after the wreck of the automobile and injury to deceased, from which he died, and that the photos show the ground and scene of the wreck just as it was when the wreck occurred. This was a question for the determination of the jury. Sufficient time had elapsed in which the ground could have been cleared, and whether or not this had been done was purely a question for them to decide.

[2] The further contention of the defendant is that the deceased crossed the track in front of the on-coming train, that there was nothing to obstruct his view of the approaching train, and therefore it was evidence that he did not look and listen for its approach, and was therefore guilty of such contributory negligence as precludes a recovery for his death. The presumption is that the deceased, in going on the track, would take such precautions as were necessary for his own safety, and it would not be presumed from the fact that he went upon the track in front of the advancing train, that he did not look and listen, but the presumption is to the contrary until the evidence shows some fact or circumstance which conclusively establishes that he did not do so. Such question of negligence, therefore, becomes and remains a question of fact for the jury to decide. T. & P. Ry. Co. v. Levine, 87 Tex. 437, 29 S. W. 466; Scott v. T. & P. Ry. Co., 93 Tex. 625, 57 S. W. 801; I. & G. N. Ry. Co. v. Sandlin, 57 Tex. Civ. App. 151, 122 S. W. 60; Galveston, H. & S. A. Ry. Co. v. Thompson (Tex. Civ. App.) 116 S. W. 106, 110; Jones v. Louisiana Western Ry. Co. (Tex. Com. App.) 243 S. W. 976, 979; Lee v. Railway, 89 Tex. 583, 588, 36 S. W. 63.

[3] The rule laid down by our courts is:

"That a question of negligence, dependent on evidence, should not be taken from the jury, except in cases where there is no material conflict, and where there is no room for different minds to draw different inferences from it." Bonn v. G., H. & S. A. Ry. Co. (Tex. Civ. App.) 82 S. W. 808. See, also, Texarkana & Ft. Smith Ry. Co. v. Frugia, 43 Tex. Civ. App. 48, 95 S. W. 563; C., R. I. & G. Ry. Co. v. Clay, 55 Tex. Civ. App. 526, 119 S. W. 730; I. & G. N. Ry. Co. v. Walker (Tex. Civ. App.) 161 S. W. 961; St. Louis, S. F. & T. Ry. Co. v. Morgan (Tex. Civ. App.) 220 S. W. 281; Hovey v. Sanders (Tex. Civ. App.) 174 S. W. 1025; T. & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; C., R. I. & G. Ry. Co. v. Laro (Tex. Civ. App.) 273 S. W. 684; Letsinger v. Panhandle & S. F. Ry. Co. (Tex. Civ. App.) 286 S. W. 1107; Freeman v. G., H. & S. A. Ry. Co. (Tex. Com App.) 285 S. W. 607.

[4] As stated above, the road approaching the crossing was rough; just before deceased

reached the dump of the railroad crossing, there was a depression or ditch, testified to by some witnesses as being three feet deep, and presenting a mud hole that required the deceased to avoid it; that as he ascended to the crossing he was confronted with the projecting ends of the ties and the elevated rails. This situation would naturally require a large part of his attention in looking after his personal safety while driving a car. For that reason the question would be left to the jury as to whether he was guilty of contributory negligence in driving upon the track, under the circumstances.

Associate Justice Smith, in the case of C., R. I. & G. Ry. Co. v. Laro, supra, discussing the contention of the railroad company in that case, that the undisputed facts as a matter of law establish contributory negligence upon the part of the deceased, clearly states the difficulty of applying rules laid down in the cited cases, and says:

"But the cited cases are of no value here except as they state the general principles applicable to this and all similar cases. Those general principles have been stated so often as to have become axiomatic in all courts and among all lawyers. They apply in all cases of crossing accidents, and, while it is never difficult to restate and invoke them in such cases, yet, when they are once invoked in a decision they constitute only the foundation of a structure which must be reared and completed with facts which are always peculiar to the given case. Such facts always vary in detail or degree, so that each decision after all becomes one of first impression. Was the crossing, or the approach of the railway thereto, open and in plain view, or obstructed and obscured from the traveler's view, and in what degree? Was it elevated or depressed, and to what extent? Easy or difficult to approach, and how much so? Was it much or little traveled? Was the highway in a level, open, safe environment, or was it rough, treacherous, or beset by pitfalls known or unknown to the traveler? One or more of these or other conditions exist in varying degree in every crossing case. They are rarely if ever alike in two or more cases. And yet in every case the questions arising from the conditions peculiar to it must be settled into ascertained facts, and not until then can they be squared to the general principles applicable to all such cases, and the case determined on its merits.

"Now in this case the facts are unusual. We have stated them somewhat fully, and we believe fairly. They show the intersection of a railway by a public road, environed by conditions which presented at least slight difficulties to the traveler, who was required in the exercise of ordinary care to in some degree divide his attention among those difficulties and the more serious and imminent danger of approaching trains. In other words, he was passing through a situation requiring the use of discretion on his part. It was not a case where the traveler was confronted with no other danger or difficulty than that of an approaching train, in which case only is a court permitted to assume from undisputed physical facts that, because he deliberately walked into the single and obvious danger, the traveler is guilty of contributory negligence as a matter of law.

"Whether or not the deceased wisely exercised his discretion in the situation through which he was obliged to pass is not a question for decision here. Whether he properly divided his attention among the several objects of danger, or accurately gauged those dangers, or looked down the track at the precise psychological moment—if indeed a psychological moment was ever available to him, in view of the terrific speed of the train—these questions are not now in the case. It is sufficient for this court to determine that the peculiar facts of the case called for the use of some degree of discretion by the traveler, and, when that is determined, the decision relates back to the finding of the jury, which, being supported by the testimony, must not be disturbed."

This court has practically approved the holding in the Laro Case, by recognizing the fact that the deceased would be in a position where his attention would have been occupied with the difficulties of the road, as an element of exoneration from the charge of contributory negligence. Letsinger v. Railway, supra.

[5] Under the issues submitted to them, the jury found: That the whistle was not blown at a point sufficiently near the crossing to be reasonably calculated to give warning to a person about to cross the same, such point not being nearer the crossing than 80 rods; that the failure to blow the whistle was the proximate cause of the death of the deceased; that the employees of the defendant in approaching the crossing did not ring the bell at least 80 rods from the said crossing and continue to keep the bell ringing up to the place where the railroad crossed said crossing, and that failure to so ring the bell and continue ringing same was the proximate cause of the death of the said Perry; that the employees of the defendant in charge of the engine did not exercise such care in approaching and crossing the dirt road, at which J. J. Perry was injured, and from which injury he died, as a person of ordinary prudence would have used under the same or similar circumstances, to discover the deceased and avoid injuring him; that such failure to use ordinary care was the proximate cause of Perry's death; that the rate of speed at which the train was operated as it approached and passed the crossing did not constitute negligence on the part of the defendant; that J. J. Perry was not guilty of negligence in being where he was at the time the train struck and killed him; that $7,000 was adequate compensation to the plaintiff for the death of her husband, J. J. Perry; that J. J. Perry was not guilty of negligence in approaching the crossing with his cab curtains up.

The evidence, while conflicting, was sufficient to support each of said findings.

[6] Appellant assigns as error the overruling of its exception to so much of the court's

charge as is submitted in connection with special issues Nos. 1 to 10, as well as the submission of such issues in connection therewith, for the reason that the same constitutes a general charge in the case submitted on special issues, is confusing and misleading and necessarily calculated to mislead and confuse the jury, in that it was the duty of the court to submit issues of fact, separate and distinct from issues of law. That these questions may be understood, we give the charge of the court in full here, and the special issues which follow:

"Gentlemen of the Jury, this case is submitted to you on the following special issues, which you will answer separately, numbering your answers to correspond with the number of question answered, which answers you will have your foreman to sign.

"Special issue No. 1. Did the employees of the defendant, who were operating the train that caused the death of J. J. Perry, blow the whistle of the engine attached to said train at a point sufficiently near the crossing to be reasonably calculated to give warning to a person about to cross the same; such point not being nearer the crossing than 80 rods.

"Special issue No. 2. If you answer special issue No. 1, in the affirmative, you need not answer this question, but, if you answer in the negative, then state: Question. Was the failure, if there was a failure, on the part of the employees of the defendant railway company to blow the whistle, as inquired about in the preceding question, the proximate cause of the death of J. J. Perry?

"Special issue No. 3. Did the employees of the defendant, in approaching the crossing where J. J. Perry was killed, ring the bell of the locomotive at least 80 rods from the said crossing and continue to keep the bell ringing up to the place where the railroad crossed said crossing?

"Special issue No. 4. If your answer to the above and foregoing special issue No. 3 be in the affirmative, you need not answer this question, but, if your answer be in the negative, then state: Question. Was the failure on the part of the employees of the defendant to begin ringing the bell of the locomotive at least 80 rods from said crossing and to continue to keep the bell ringing up to the place where the railroad crossed said dirt road the proximate cause of the death of said J. J. Perry?

"Special issue No. 5. Did the employees of the defendant, in charge of the engine exercise such care in approaching and crossing the dirt road at which J. J. Perry was injured and from which injury he died, as a person of ordinary prudence would have used under the same or similar circumstances to discover the deceased, J. J. Perry, and avoid injuring him?

"Special issue No. 6. If you answer the above and foregoing issue No. 5 in the affirmative, you need not answer this question, but, if your answer be in the negative, then state: Question. Was such failure, if any, to exercise ordinary care, a proximate cause of J. J. Perry's death?

"Special issue No. 7. Did the rate of speed at which the train was operated as it approached and passed the crossing in question constitute negligence on the part of the defendant?

"Special issue No. 8. If your answer to the above and foregoing special issue No. 7 be in the negative, you need not answer this question, but, if your answer be in the affirmative, then state: Question. Was such negligence, if any, a proximate cause of the death of the said J. J. Perry?

"Special issue No. 9. Was J. J. Perry guilty of negligence as in being where he was at the time he was struck and killed?

"Special issue No. 9a. If you answer the above and foregoing issue No. 9 in the negative, you need not answer this question, but, if your answer be in the affirmative, then state: Question. Was such negligence, if any, a proximate cause of the death of the said J. J. Perry?

"In answering the above and foregoing question, you will bear in mind the following instructions: Said J. J. Perry owed to himself the duty to use ordinary care and prudence for his own safety, regardless of whether defendant railway company was or was not guilty of negligence.

"Special issue No. 1. What sum of money, if any, if paid in cash, at this time, do you find will fairly and adequately compensate plaintiff for the pecuniary loss she sustained, if any, by the reason of the death of the said J. J. Perry, caused alone by the negligence, if any, on the part of the defendant?

"When answering the damage, if any, you are instructed that you may only take into consideration the age of the deceased, J. J. Perry, his habits, industry, and earning capacity, if any, and find for the plaintiff Mrs. Addie B. Perry such sum of money as will, if paid now, fairly compensate the plaintiff Mrs. Addie B. Perry for the pecuniary loss, if any, she sustained by reason of the death of the said J. J. Perry, resulting alone from the negligence, if any, of the defendant.

"You will not consider the sorrow, mental anguish, or grief of the plaintiff Mrs. Addie B. Perry, and the loss of society or affection of the deceased towards the plaintiff Mrs. Addie B. Perry, nor can you consider the cost, expense or attorney's fees, if any, incurred by plaintiff, nor can you consider any other matter, not in evidence before you, and not referred to in this charge, as they constitute no part of the recoverable damage.

"By 'negligence,' as the term is used in this charge, means a failure to use such care and precaution as a person of ordinary prudence would use under like and similar circumstances. 'Ordinary care,' as used in this charge, means such care and prudence as a person of ordinary temperament would use under the same or similar circumstances. 'Proximate cause,' as used in this charge, means that the cause which in continuous sequence, unbroken by any new independent cause, produces an effect or injury and but for which the same would not have occurred, and that the result must be such as the person of ordinary prudence would have seen as likely to have occurred.

"The burden of proof is upon the plaintiff to establish by a preponderance of the evidence, the affirmative of the issues, Nos. 1, 2, 3, 4, 5, 6, 7, 8, and 10, and, unless the plaintiff has carried this burden as to these issues, you will answer the same in the negative.

"The burden of proof is upon the defendant to establish the affirmative of the issues No. 9, 9a, and Nos. 1, 2, 3, in the additional charge, by the preponderance of the evidence, and, un-

less the defendant has carried this burden as to these issues, you will answer the same in the negative.

"You are the exclusive judges of the facts proven, of the credibility of the witnesses, and of the weight to be given their testimony, but you are bound to receive the law from the court as herein given you and be governed thereby."

"Gentlemen of the jury, the following two additional charges are submitted to you with the same instructions as the instructions given you in the main charge:

"Issue No. 1. Was the view of the crossing where J. J. Perry was killed obscured either wholly or partially? Answer 'Yes' or 'No.'

"Issue No. 2. If you answer the above issue in the negative, then you need not answer the following question: Question. Did the deceased, J. J. Perry, operate the truck that he was driving at a speed greater than 6 miles an hour from a point 30 feet from the defendant's railroad track up to the place where he was struck?

"Issue No. 3. If you answer special issue No. 2 in the affirmative, then you will answer the following question; otherwise, you need not answer this question: Question. Was such speed at which he was operating his car at the time he was struck by the train of the defendant the proximate cause of his injury and his death?"

Where the court submits a charge upon special issues, as provided in article 2189, Revised Statutes 1925, he is also required by that article to submit such explanations and definitions of legal terms used in the charge as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues. The above charge complained of was evidently given to comply with this requirement of the statute, and each paragraph is clearly explanatory in its nature or is a definition of said legal term, used in such issues.

[7] The instruction to the jury that they could not consider the sorrow, mental anguish, or grief of the plaintiff could not have possibly resulted in injury to appellant.

[8] The appellant's contention that the trial court erred in placing the burden of proof to establish contributory negligence of deceased on the appellant cannot be sustained. C., R. I. & G. Ry. Co. v. Clay, 55 Tex. Civ. App. 526, 119 S. W. 730; G., C. & S. F. Ry. Co. v. Williams (Tex. Civ. App.) 290 S. W. 846; G., C. & S. F. Ry. Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538.

[9] The appellant complains of the refusal on the part of the trial court to give affirmatively to the jury the issues presenting its defense. It was the duty of the trial court to do this when a proper charge was tendered him. However, it appears that in each of the special issues tendered the court for submission to the jury, by appellant, there was an assumption of the existence of some fact which rendered the same objectionable, under the rule that the trial court must not by its charge assume the existence of any fact

upon any controverted issue. We cannot take the space necessary to set out each of such special issues submitted, by the appellant, or to discuss wherein each was objectionable, but will quote a few of them to illustrate the reason of our holdings that they violate the rules:

"Was J. J. Perry guilty of negligence as hereinafter defined in failing to stop his truck and look and listen for trains on the defendant's track, before driving on the crossing?"

"Do you find from a preponderance of the evidence that J. J. Perry was guilty of negligence in failing to keep a proper lookout to discover the defendant's train with which his truck collided?"

"Do you find from a preponderance of the evidence that J. J. Perry was guilty of contributory negligence in approaching the crossing with his cab curtains up, without looking and listening for the approach of defendant's train?"

"Do you find from a preponderance of the evidence that J. J. Perry was guilty of negligence as hereinafter defined, in failing to discover the on-coming train before driving his truck onto the crossing where the collision occurred?"

[10] The charge of the trial court correctly presenting the issues, it was not incumbent upon him to reform appellant's special issues, in order to have them correctly present the issues therein presented. Gulf, Colorado & S. F. Ry. Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538; Wichita Falls, R. &. F. W. Ry. Co. v. Combs (Tex. Com. App.) 268 S. W. 447; St. Louis S. W. Ry. Co. v. Bradberry (Tex. Civ. App.) 237 S. W. 364; Freeman v. G., H. & S. A. Ry. Co. (Tex. Com. App.) 285 S. W. 607.

[11] The appellant complains of the submission of special issue No. 9 in the court's general charge; however, in this connection, it is shown by the record that appellant prepared and submitted to the court its special issue No. 4, as follows:

"Do you find from a preponderance of the evidence that J. J. Perry was guilty of negligence, as hereinafter defined, in driving his truck onto the crossing where the collision occurred, under the circumstances and conditions shown by the evidence to have existed at the time and place where the collision occurred?"

If the special issue No. 9 was objectionable because it covered all phases of contributory negligence charged to deceased, it was invited error by reason of the submission and request of the court, by appellant, to give such special issue No. 4, because issue No. 4 essentially presents and groups all such phases of contributory negligence for presentation to the jury. Pyron v. Brownfield (Tex. Civ. App.) 269 S. W. 202, 204, and cases therein cited; but there is another phase to the question under consideration, which we will discuss:

[12] The plaintiff in her petition pleaded negligence on the part of defendant in the careless operation of its train, in this: In

the excessive speed of the train; in the failure to have the bell rung, and the whistle blown; in the failure to keep a lookout for persons who might be passing over the track; in the failure to keep and maintain a reasonably safe crossing; in permitting trees, shrubs, etc., to grow on its right of way in such manner as to obstruct the view of an approaching train, etc.

The defendant pleaded a special denial that it was in any way negligent in the construction and maintenance of the crossing, and that the view from said crossing was not obstructed, and that the deceased was guilty of negligence which contributed to his injury and death in the following particulars: In that he failed to exercise ordinary care in keeping a proper lookout to discover the train, especially the train which collided with his truck; in failing to stop his truck and look and listen; in failing to slow his truck down; that, despite the fact that the deceased was hard of hearing, he did not take the precaution to stop and look and listen before entering on the track.

It will be seen that the issues submitted by the court practically cover these charges of negligence on the part of defendant and of contributory negligence on the part of deceased, and that the giving of special issue No. 9 was in addition to the other issues submitted. The charges and issues submitted are not complained of by the plaintiff, and, as we understand the defendant's objections, it first objects to issue No. 9, because it fails to support the issues of contributory negligence, distinctly specifying each fact or group of facts pleaded, to constitute negligence on the part of deceased; and, second, because the court refused to give certain special issues as set out above. As stated, we think the trial court was invited into the error of giving special issue No. 9 by the defendant's requested issue No. 4, but we also think the objection is not tenable, because the rule provided by statute, that the issues must be separately and distinctly presented, had in part been complied with. The issues submitted and answered, consequently, largely anticipated the general answer to the general issue of contributory negligence in the deceased being where he was on the crossing when he was struck, and did not prevent the jury returning answers to the other issues. This being true, and the other special issues not being affirmatively erroneous, it devolved on the defendant to tender correct issues, the giving of which would have presented to the jury an opportunity to have answered them specifically. If the issues submitted were not correctly drawn, then the trial court did not err in refusing to submit them to the jury, and no duty rested upon him to reform or redraft such issues making them correct. G., C. &

S. F. Ry. Co. v. Shieder, supra; St. Louis S. W. Ry. Co. v. Bradberry, supra; Wichita Falls, R. & F. W. Ry. Co. v. Combs, supra.

"Where the court has actually submitted the defense, though in general terms, it is not error to refuse a requested issue which is incorrect." Freeman v. Galveston, H. & S. A. Ry. Co. (Tex. Com. App.) 285 S. W. 607.

The rule laid down in the case of Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517, does not apply to this case, because in the Fox Case the Supreme Court was considering a case where the grouping of all acts of contributory negligence had been submitted by the trial court without having submitted the issues separately.

We have carefully considered all propositions and assignments, and, finding no reversible error, we affirm the judgment of the trial court.