TEXAS & PACIFIC RAILWAY COMPANY v. F. J. BAILEY.

No. 3385.

1.  **Case Adhered to.**—Railway v. Johnson, 76 Texas, 425, adhered to, as to the liability of the railway company for injures inflicted while the road was in the hands of the receiver.

2.  **Liability of Railway Company—Receivers—Practice.**—If there were any equities in favor of the railway company growing out of the fact that the liabilities of the receiver for unadjusted claims exceeded the amount expended in betterments they should have been pleaded.   Not having been pleaded the refusal to charge upon the subject was not error.

3.  **Same—Unliquidated Claims.**—Nor should undetermined suits for unliquidated demands be computed as claims for which the receiver was liable, if such inquiry should be gone into upon proper pleadings.

4.  **Insanity of Husband—Guardianship.**—Our statutes provide for the appointment of a guardian of an insane person, and for the administration of his estate pending his insanity, and he must be represented by a guardian in all transactions concerning his estate.

5.  **Same — Fact Case. —** The husband sued for damages for personal injuries inflicted by negligence of the railway company defendant.   Pending suit he became insane.   The wife was permitted to prosecute the suit in her own name to judgment in her favor.   *Held,* error.   The suit could only be prosecuted by a guardian of the husband appointed by the Probate Court.

6.  **Ringing Bell, Blowing Whistle, etc. —Charge.—** On the trial of an action against the railway company for damages from negligently injuring the plaintiff at a public crossing, the court instructed that it was the duty of the servants of the company to ring the bell or blow the whistle eighty rods before coming to the crossing. The engine causing the injury had not gone eighty rods from the crossing before returning to it on occasion of the injury.   The court had also instructed that if the distance to which the engine went past the crossing was less than eighty rods, then it was the duty of said servants, etc., to ring the bell, etc., while the engine was in motion within eighty rods of the crossing.   *Held,* that the charge was correct.

APPEAL from Harrison.    Tried below before Hon. A. J. BOOTY.

This suit was brought by F. J. Bailey for personal injuries received by him in a collision with an engine and tender on the track of the Texas & Pacific Railway Company at a public crossing in the city of Marshall, September 24, 1888.  Suit was begun October 30, 1888.  On September 13, 1890, Mrs. Annie Bailey, the wife of the plaintiff, filed a supplemental petition showing that since the last term of the court her husband had became insane; that he had been declared a lunatic by proper authority, and had been ordered to be confined in the asylum at Terrell, and that he was still insane and was then confined in said asylum; that she was his wife at the time he received the injuries complained of, and because of the insanity of her husband she made herself a party plaintiff in his place, and asked for an order allowing her to prosecute the suit in her own name, and for judgment.

March 20, 1891, the case was tried and resulted in a verdict for the plaintiff for $10,000, and judgment was entered thereon "that the plaintiff Annie Bailey, wife of F. J. Bailey, do have and recover," etc., and that execution issue.

At the time the injuries were inflicted the railway was being operated by John C. Brown, as receiver, under the appointment of the United States Circuit Court, at New Orleans; but at the time of the trial the receiver had been discharged, and the control of the railway returned to the defendant company to whom it belonged.  It was shown on the trial that the net earnings of the railway while in the hands of the receiver had been invested in betterments, which had been turned over to appellant to an amount far in excess of the plaintiff's judgment.

Defendant's motion for a new trial was overruled, and it has appealed.

*F. H. Prendergast*, for appellant.—1.   The court erred in sustaining plaintiff's demurrer to defendant's plea in abatement setting up that the road was operated by a receiver when the plaintiff was hurt, and setting up the order discharging the receiver.   Defendant declared under oath, that at the time Bailey was injured the road was operated by John C. Brown, receiver, appointed by the United States Circuit Court, at New Orleans, Louisiana; that said receiver was discharged October 31, 1888, and the property in his hands as receiver was delivered to the Texas & Pacific Railway Company, under the order of the court discharging him, which made the property liable only for such obligations of the receiver as should be adjudged in favor of persons who intervened in the cause where the receiver was appointed, and free from all other claims.   This is the same question that was presented and held untenable by this court in Railway v. Johnson, 76 Texas, 425.   We still desire the question ruled on by this court.

2. The court erred in charging the jury to find against the Texas & Pacific Railway Company, if they find for plaintiff, because the evidence showed that the receiver was operating the road when plaintiff was injured, and the evidence showed that the claims against the company for acts of the receiver exceeded the value of improvements put on the road by the receiver.

John A. Grant testified, that he was general manager of the Texas & Pacific railway since January 1, 1887. The books show that there were $5,000,000 expended for improvements and betterments; net earnings that were used to pay interest on the Eastern Division bonds, and the State school fund loan amounted to little over $2,000,000, as shown by the records, were expended in the betterments of the property; $2,000,000 of net earnings went into improvements, and the balance derived from assessments and contributions by the stockholders. When the receiver was discharged there were suits pending against the receiver amounting to $1,789,000; when the receiver was discharged there were pending unpaid judgments to the amount of $84,470. Since the receiver has been discharged there have been filed suits on cause of action against the receiver to the amount of $832,694. The reasonable value for the use of the railway during the receivership, over operating expenses, would be $1,300,000. Two million three hundred and sixty-five thousand nine hundred dollars were raised by the contributions of stockholders and expended for betterments during the receivership.

3. The court erred in holding that Mrs. Bailey could prosecute this suit in her name, she not being guardian.

In this case the wife seeks to maintain the suit for damage to her husband solely on the ground of her husband being insane. Our position is, that there should be a guardian appointed. The recovery in this case would be community property. It was finally held in Heidenheimer v. Thomas, 63 Texas, 290 (overruling Forbes v. Moore, 32 Texas, 195), that the wife of an insane husband could not sell community property.

The troublesome questions that arise are, to whom shall the money be paid in this case, and whether this suit is a bar to a suit in future by the husband? Even if it be held that a next friend could sue, that would be far from holding that the wife as wife could sue. Story's Eq. Pl., secs. 64, 65.

It is said in Chitty on Pleadings, p. *577, that an idiot could appear and defend in person or by any person who could make a better defense for him; "but a lunatic, or one who becomes non compos mentis, must appear by guardian if he be within age, or by attorney if of full age."

Mrs. Bailey seeks to maintain this suit merely because she is the wife of F. J. Bailey, the injured party, who is now a lunatic; and we maintain that a guardian should be appointed. It was decided in the

case of Murphy v. Coffey, 33 Texas, 508, that a married woman could not sue to recover community property.

4.    The court erred in charging the jury that it was the duty of the railway company to ring the bell or blow the whistle eighty rods before coming to the crossing. The uncontradicted evidence showed that the train had not gone eighty rods from the crossing before it returned, and the charge on this point was confusing and misleading to the jury.

*James Turner, R. C. De Graffenried,* and *Pope, Wilson & Lane,* for appellee.—It is our purpose to notice in this supplemental brief the third assignment of error of appellant, to-wit: "The court erred in holding that Mrs. Bailey could prosecute this suit in her name, she not being guardian."

The court did not err in its ruling. In the case of Heidenheimer v. Thomas, 63 Texas, 290, the question before the court was the power of the wife to join her husband, who was non compos, in conveying the homestead where the conveyance was made to pay a debt already due by the husband to the vendee; and the court in that case further held, that the wife has no power during the husband's insanity to sell either his separate property or that belonging to the community. But neither of the questions are involved here. The question here is, can she have this suit carried on to judgment in her name? In the Heidenheimer case, the wife for herself and as next friend for a child of the marriage sued Heidenheimer for the homestead, but the opinion fails to disclose whether her husband was a party to the suit either as plaintiff or defendant. In the case now before the court it seems there were no children.

In the case of Wright v. Hays, 10 Texas, 135, Chief Justice Hemphill says:   "When the husband ceases the discharge of his duties and contributes in no mode to the support of wife and family, reducing the wife to the necessity of providing for them and in taking care of the common property, or otherwise suffer it to go to waste,   *   *   *   do not his rights over the effects of the community cease from the very nature of things, and are not the passive rights of the wife quickened into vigorous activity?   She is necessarily compelled to assume the position of the husband, to discharge his duties and incur his responsibilities, and her powers should correspond to the position which by default of the husband she is thus compelled to assume, and especially should the controlling power of the husband over the goods of the community be transferred to the wife."

Now, what good reason can there be to have a guardian appointed in a case like this?   The recovery would be community property.   She stands ready to protect the rights of her husband and herself and to prosecute the same to judgment.   If she should refuse or even remain silent, then the case would be different.

Suppose Mrs. Bailey, the wife, had suffered the injury for which the suit is brought, then her husband would have been the proper party to prosecute same; and if during its pendency he had become insane, will it be pretended that she could not take his place and go on with the case? Will it be said that a guardian should be called in to secure a recovery which, when had, will be community property?

GARRETT, PRESIDING JUDGE, *Section B.*—The question determined in the Texas & Pacific Railway Company v. Johnson, 76 Texas, 425, as to the liability of the railway for injuries inflicted while the road was in the hands of the receiver, is again presented for our consideration by the appellant. We see no reason why the decision in that case should not be adhered to. But the further question is raised, that if the claims against the company for the acts of the receiver while the road was in his charge should exceed the value of the improvements or betterments of the property made by him out of the earnings coming into his hands, then the company should not be liable. This defense was not raised by the pleading, and the charge requested by the appellant embodying the same was properly refused. If there were any equities in favor of the company growing out of the fact that the liabilities of the receiver for unadjusted claims exceeded the amount expended in betterments, they should have been pleaded. The defendant answered only by plea denying its liability for acts of the receiver generally, general denial, and contributory negligence. Nor do we think that pending and undetermined suits for unliquidated demands should be computed as claims for which the receiver was liable if such inquiry should be gone into upon proper pleadings.

After the plaintiff F. J. Bailey became insane, his wife Annie Bailey was permitted by the court to intervene and make herself a party plaintiff and prosecute the suit to judgment in her own behalf. It was alleged and shown that the injuries sustained by her husband were inflicted during their marriage. This action of the court has been assigned as error.

The damages recoverable for the injury to the husband were the common property of the husband and wife, and could be disposed of by him only; and the entire control and disposition of the community property is with the husband, except in certain instances well established by the decisions of the Supreme Court, as where he voluntarily abandons the wife, and of his prolonged absence. An insane person is not civilly dead. Civil death is that change in a person's legal and civil condition which deprives him of civic rights and judicial capacities and qualifications, as natural death extinguishes his natural condition. In English law it followed as a consequence of being attainted of treason or felony, and anciently by entering a monastery or abjur-

ing the realm. Black's Law Dic., "Civil Death;" 3 Am. and Eng. Encyc. of Law, 273. Our statutes provide for the appointment of a guardian of an insane person and for the administration of his estate pending his insanity, and he must be represented by a guardian in all transactions concerning his estate. As the husband is entitled to the possession, control, and sole disposition of the common property of himself and wife, it is necessary that suits for the recovery of such property should be conducted by him and judgment had in his name; and in case of his insanity such suits must in conformity with the law be prosecuted in the name of his guardian. In case of the death of the husband, the wife, as the marital partner, may administer the community estate subject to the laws relating to the administration of estates; and it has been held that under some circumstances she may maintain in her own name a suit for the recovery of the community property. Walker v. Abercrombie, 61 Texas, 69. When she has been abandoned by her husband her right to sell the community property has been often recognized by our Supreme Court. But in the case of the insanity of the husband the law points out the method in which he shall be represented, and that is by a guardian appointed by the County Court.

In the case of Heidenheimer v. Thomas, 63 Texas, 290, the husband while insane, joined by his wife, executed a deed by which certain real estate was attempted to be conveyed to the appellant Heidenheimer. It was contended that although Thomas, the husband, was insane when the deed was made, yet the wife having joined in the execution it was valid as a conveyance of the property. Judge Stayton, in delivering the opinion of the court, said: "We are of the opinion that no such power rests in the wife of an insane person, at least in reference to community property or the separate property of the husband. The law provides for just such a case, and renders unnecessary the exercise of any such power by the wife."

Of Forbes v. Moore, 32 Texas, 195, which is relied on by counsel for appellee, the court in Heidenheimer v. Thomas, supra, said: "It seems to have been held that during the insanity of a husband the wife might dispose of so much of the common property, or in case there be none, of so much of the separate property of the husband, as might be necessary to supply the wants of herself and their children. It does not appear in that case that the wife had disposed of any property, and the remarks made in the course of the opinion, so far as we can see from the report of the case, were not necessary to the decision of the cause."

And upon an examination of the case of Jacobs v. Cunningham, 32 Texas, 774, also cited by the appellee, it appears that the note sued on in that case was the separate property of Mrs. Cunningham, and that the suit was maintained under article 4636, Paschal's Digest. Rev. Stats., art. 1204.

There is no authority for the prosecution of the suit by the wife of the original plaintiff and the recovery of the judgment in her name. The argument of analogy to the law of partnership to which our system of community marital rights is compared falls in the presence of the statute providing for the appointment of a guardian in such case; and the reason for the exceptions read into the law in case of abandonment by the husband arises from the necessity of the case, there being no statute to meet it. It is said by counsel that Mrs. Bailey could maintain the action as next friend of the plaintiff; but the reply to this is that she did not do so. The court permitted her to prosecute the suit in her own name and in her own name to recover judgment against the defendant, and awarded her execution.

There was no error in refusing the special charges requested by the appellant, and complained of in his fourth and fifth assignments of error. There was testimony that Bailey could not see the train on account of some box cars that were standing on one of the tracks next to him, and that he was signaled to come across by a switchman. The jury had been already fully instructed by the court as to the relative duties of Bailey and the appellant at the crossing.

It appeared from the evidence that the engine was switching cars to and fro across the crossing, and went to the west of it to a distance of less than eighty rods, and on its return struck the wagon which Bailey was in. The court instructed the jury that it was the duty of the company's servants to ring the bell or blow the whistle eighty rods before coming to the crossing, which is complained of as error by the appellant, because the engine had not gone to that distance from the crossing. But the jury were also instructed that if the distance to which the engine went past the crossing was less than eighty rods east or west thereof, it was the duty of the servant in charge of the train to ring the bell or blow the whistle at any time the engine or cars were within eighty rods of the crossing. This charge was correct, and that complained of could in nowise have misled the jury or injured the appellant.

As the judgment of the court below must be reversed for the error indicated, we will not inquire whether or not the verdict of the jury was excessive in amount.

For the error of the court in permitting the suit to be prosecuted by the wife of the plaintiff during his insanity, the judgment should be reversed and the cause should be remanded, in order that proper parties may be made.

*Reversed and remanded.*