Barbara BRIGHAM, Appellant,

v.

Thurman BRIGHAM, Jr., Appellee.

No. 05–91–02095–CV.

Court of Appeals of Texas,
Dallas.

Sept. 28, 1993.

Rehearing Denied Nov. 3, 1993.

Eartha Lynn Taylor, Dallas, for appellant.

Steve Shipp, Greenville, for appellee.

Before BAKER, THOMAS and BARBER, JJ.

## OPINION

THOMAS, Justice.

In the decree granting a divorce to Barbara Brigham (Mother) and Thurman Brigham, Jr. (Father), the trial court appointed Gloria Brigham (the grandmother) sole managing conservator of the parties' two minor children. In three points of error, Mother contends that:

- the trial court abused its discretion in appointing a nonparty,[1] nonparent as the sole managing conservator;
- the evidence was legally and factually insufficient to support the trial court's finding that naming either parent as managing conservator would significantly impair the children's physical health and emotional development; and
- the trial court erred in refusing to appoint her as the sole managing conservator of the children.

---

1. The grandmother had not intervened in the lawsuit nor had she attempted to file any pleadings seeking affirmative relief.

We reverse the trial court's judgment and appoint Mother as sole managing conservator. We remand the remainder of the case to the trial court for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

Mother and Father are the parents of Justin and Justina. Both parents sought a divorce and requested that they be appointed managing conservator of the children. After a nonjury proceeding, the trial court entered an order appointing the grandmother as the sole managing conservator. Each of the parents was appointed possessory conservator.

## APPLICABLE LAW

Under section 14.01(b) of the Texas Family Code, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators unless certain conditions are met. TEX.FAM. CODE ANN. § 14.01(b) (Vernon Supp.1993). The applicable provision for this case requires the nonparent to show that appointing the parents managing conservators "would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." *See* TEX.FAM.CODE ANN. § 14.01(b)(1) (Vernon Supp.1993).

■ The presumption that the best interest of a child is best served by appointing a natural parent as the managing conservator is deeply embedded in Texas law. *See Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex.1990). A nonparent, such as a grandparent, must offer evidence of specific actions or omissions of the parent that demonstrate that appointing the parent would result in physical or emotional harm to the child. *See Lewelling*, 796 S.W.2d at 167.

## STANDARD OF REVIEW SUFFICIENCY OF THE EVIDENCE

Mother complains that there is no evidence or, alternatively, factually insufficient evidence to support the trial court's finding that naming either parent as managing conserva-tor would significantly impair the children's physical health and emotional development.

### A. No–Evidence Points

A no-evidence point is a question of law. In deciding that question, we consider only the evidence and inferences tending to support the findings and disregard all evidence and inferences to the contrary. *Jacobs v. Danny Darby Real Estate, Inc.*, 750 S.W.2d 174, 175 (Tex.1988). The findings must be upheld if there is more than a scintilla of evidence to support them. *Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex.1979). Evidence is no more than a scintilla when it is "so weak as to do no more than create a mere surmise or suspicion of [the fact's] existence." *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex.1970) (quoting Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361 (1960)). If the evidence supplies some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact, however, then there is some evidence, or, in other words, more than a scintilla of evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

### B. Factual–Insufficiency Points

In reviewing a factual-insufficiency point, we consider all of the evidence, including any evidence contrary to the judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). This Court must consider, weigh, and compare all of the evidence in the record pertinent to the issue under consideration. *Sosa v. City of Balch Springs*, 772 S.W.2d 71, 72 (Tex.1989) (per curiam); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). We set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). When a party raises both no-evidence and insufficient-evidence points, we rule upon the no-evidence point first. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981).

■ In reviewing factual insufficiency points, we note that this Court is not a fact

finder, and we cannot substitute our judgment for that of the trial court, as fact finder, even if a different finding could be reached on the evidence. *See Exxon Corp. v. Tidwell,* 816 S.W.2d 455, 464 (Tex.App.—Dallas 1991, writ granted) (citing *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.)). It is within the province of the trier of facts to weigh the evidence and assess the credibility of the witnesses. The trial court, as fact finder, was the judge of the facts proved and of the reasonable inferences to be drawn therefrom. *See Exxon Corp.,* 816 S.W.2d at 464 (citing *Lockley v. Page,* 142 Tex. 594, 598, 180 S.W.2d 616, 618 (1944)).

## TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In the findings of fact, the trial court set forth the following pertinent items: [2]

(6) That on or about August 5, 1990, [Mother] left her children in the custody of [the grandmother], without having first informed [the grandmother], the children or [Father] as to where she was going.

(7) That [Mother] remained away from her children for a period of four days without notifying [the children], [Father], or [the grandmother] of her exact location, or when she would return.

(13) That for some time, [the grandmother] would have [the children] approximately fifty percent of the time, and [she] is a good, stable care provider.

(14) That during the summer of 1991, while the children were in the possession of [the grandmother], [Mother] left town without advising her children or [the grandmother] as to her whereabouts and remained gone for several days.

(16) That [Mother] is likely to move from the area once the divorce is final.

(17) That the children enjoyed a more stable home life while with their paternal grandparents than with either parent.

Based upon the evidence, the trial court concluded:

(2) That the children would possibly be removed from the [S]tate of Texas if awarded to either parent, and thereby be denied regular visitation by all of the children's other relatives and the other parent.

(3) That [the] children enjoy a more stable lifestyle while residing with the paternal grandparents than with either parent individually.

(4) That the appointment of [Mother] or [Father] as managing conservator would not be in the best interest of said children because said appointment would significantly impair said children's emotional development, by effectively ceasing involvement by one parent and area relatives.

### A. Evidence Presented

Mother's conduct forming the basis for findings of fact numbers six and seven involved the parents' final separation. On the date in question, Mother took the children to church. As they normally did, the children left church with the grandmother. Mother did not tell anyone of her intention to leave Father and in fact told him that she would be home after she stopped at the grocery.

Later that day, Mother called Father and told him that she was in Austin and that she no longer wanted to live with him. In addition, Mother wrote a postdated letter to the grandmother explaining why she felt that she could no longer live with Father. She admittedly did not tell anyone her exact whereabouts during this period of time. Mother did not see or talk to the children until the following Friday, although she returned to Greenville, Texas on Tuesday or Wednesday.

The 1991 incident referenced in finding of fact number fourteen involved a vacation by the grandmother with the children. During the pendency of the divorce action, Mother allowed the grandmother to take the children to New Orleans. They were to be gone three or four days. During the time that the

2. Because Mother is the only parent contesting the trial court's order, we will limit our consider-

ation and review to the factual findings that relate to Mother.

children were away, they tried to call Mother on a number of occasions. They were not, however, able to reach her. In addition, the children tried to call Mother when they returned to the grandmother's home. They were not able to reach Mother for almost two days.

Finding of fact sixteen reflects that Mother is likely to move from the area once the divorce is final. We find nothing in the record other than pure speculation that she might move with the children.

There was a history of marital problems between the parents. During a part of the marriage, Father's work required extensive travel away from home. In addition, his job history was somewhat erratic, and their marital problems were always greater during the periods that Father was unemployed. There were also a number of marital separations. The last separation occurred after Father had been unemployed for almost two months.

Throughout this time, the children enjoyed a close nurturing relationship with the grandmother. They spent a great deal of time in her home. This close relationship continued until the latter months of the final separation.

According to Mother, the final separation occurred because she found out about Father's continuing relationship with another woman. The record reflects that this other woman had a child who carried Father's last name.

According to Father, the marital problems were a result of Mother having an affair with their family minister. We note that the trial court granted Father a divorce on the basis of adultery and that there was a further finding of fact that the minister was out of the city at the same time as Mother in August 1990.

### B. Application of the Facts to the Law

■ The fact that Mother left town without telling anyone her exact whereabouts at the time of the final separation is not evidence of significant impairment to the chil-

dren. This is particularly so, given the fact that the children were left with the grandmother and Father. The fact that she was not available for telephone calls while the children were on vacation with the grandmother is not evidence that placement with Mother would emotionally impair the children.

### C. Conclusion

We, therefore, conclude that the instances cited and the evidence presented were so weak as to do no more than create a mere surmise or suspicion that Mother's appointment as managing conservator would significantly impair the children, either physically or emotionally. *See Lewelling,* 796 S.W.2d at 167.[3]

Accordingly, we sustain Mother's no-evidence point. We reverse the trial court's judgment, name Mother as sole managing conservator, and remand the remaining issues to the trial court for further proceedings consistent with this opinion.

---

**3.** In view of our disposition of Mother's argument, it is not necessary for us to address the propriety of the trial court's action of appointing a nonparty. *Cf. Landry v. Nauls,* 831 S.W.2d 603 (Tex.App.—Houston [14th Dist.] 1992, no writ).