NATIONAL UNION FIRE INSURANCE
COMPANY, Appellant,

v.

Latricia BURNETT, Appellee.

No. 06–97–00089–CV.

Court of Appeals of Texas,
Texarkana.

Argued April 2, 1998.

Decided May 29, 1998.

J. Preston Wrotenbery, Magenheim, Bateman, Robinson, Houston, Michael R. Spurgers, Fillmore & Purtle, Wichita Falls, for appellant.

R. Harold White, Jr., Banner, Briley & White, L.L.P., Wichita Falls, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

National Union Fire Insurance Company appeals the county court's ruling that awarded Latricia Burnett lifetime benefits under the former Workers' Compensation Act, Article 8306, § 11a, because of resulting afflictions from a closed head injury she sustained at work.

National Union contends that lifetime benefits are not warranted because Burnett suffers only from depression, which does not fall within the meaning of "incurable insanity or imbecility," a condition that is a prerequisite to lifetime recovery under Article 8306, § 11a(6). Alternatively, National Union asserts that lifetime benefits are not justified because there is no evidence or insufficient evidence that Burnett suffered an "injury to the skull," another prerequisite to recovery under Article 8306, § 11a(6). National Union also questions the proper causation standard and contends that the causal link between her head injury and her inability to work is insufficient.

On September 12, 1990, Burnett, a sales clerk in the pharmacy department at Wal–Mart, climbed a storeroom ladder to retrieve merchandise for a customer and fell on her right side. No one witnessed the event, and she does not remember specific details about the fall. She testified that when co-workers came to her aid and asked how she was, she told them that she was hurt. She originally stated in her deposition that she did not hit

her head when she fell; however, she retracted that statement and testified that she must have hit her head because the impact of falling on her right side caused her to suffer a closed head injury that bruised the left side of her brain.

Pharmacist Bob Strait heard Burnett fall and arrived at the scene five to ten seconds after she landed on the floor. He testified that when he first saw her, she was on her knees and getting back on her feet. He also stated that when he asked her if she was hurt, she told him, "I will be all right." To Strait, she appeared embarrassed, but not disoriented or externally injured. She did not complain to him about an injury to her head or of having been unconscious.

After her fall, she was taken to a clinic where a general practitioner diagnosed her with bruises and acute cervical and shoulder strain. She did not return to work for six months.

In the months following her fall, Burnett consulted several physicians about various ailments, including migraine headaches, depression, memory defects, numbness, blurred vision, excessive sleeping, suicidal thoughts, inattentiveness, chronic pain disorder, restricted range of motion, and weakness in her arm and shoulder. Despite her complaints, all objective tests had normal results. No objective tests showed that she actually struck her head in the fall, and no physician saw any external trauma to her head.

It is undisputed that Burnett's primary diagnosis today is severe depression. Dr. Danny Bartel, her neurologist, testified that both her head injury and her chronic pain disorder could be a cause for her depression. In August 1991, Dr. Bartel admitted Burnett into the hospital so that Dr. Richard Bibb, a psychiatrist, could treat her for depression, self-depreciation, and suicidal ideations. She was hospitalized again for depression in October 1992. Although Dr. Bartel testified that Burnett's condition is static and permanent, Dr. Emory Sobiesk, a psychiatrist appointed by the trial court to conduct an independent examination of Burnett, testified that her depression is treatable with medication and was in remission during her last visit with him eight months before trial.

Burnett made three attempts to return to work. However, because of her ailments, her attempts were unsuccessful. Dr. Bartel testified that Burnett felt pressure from her supervisor to work as efficiently as she had worked before the accident. That pressure made her feel inadequate, which led to physical pain, including headaches, and feelings of guilt and anxiety. In turn, those feelings, along with the medication she took to relieve her pain, led to her state of depression. Dr. Bartel testified that Burnett probably would have been able to continue working with certain limitations had she not felt pressure from her supervisor. Her employee performance review before her fall indicated that she earned the highest marks possible; however, the employee performance review several months after her fall showed that she earned the lowest marks possible. The second performance review noted that she got confused, suffered memory loss, and would not follow orders correctly.

In October 1993, the Texas Workers' Compensation Commission found that Burnett was injured in the scope of her employment and that her injury resulted in a total and permanent incapacity. She was awarded a weekly amount of $156.92 for 401 weeks, payable in a lump sum payment. Soon thereafter, National Union, Wal–Mart's insurance carrier, appealed the Commission's award by filing suit in the county court, alleging that her disability, if any, was temporary and had since ceased or, alternatively, that her disability was partial and not total. Burnett then filed a counterclaim against National Union seeking lifetime benefits. The court ordered National Union to pay lifetime benefits to Burnett in the amount of $120.00 each week. The court filed findings of fact and conclusions of law. National Union's motion for new trial was overruled by operation of law, and this appeal ensued.

In 1990, Section 10(b) of the former Workers' Compensation Act read as follows:

Section 10: . . .

(b) If the injury is one of the six (6) enumerated in Section 11a of this article as constituting conclusive total and permanent incapacity, the association shall pay

the compensation for the life of the employee, but in no other case of total and permanent incapacity shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of injury.

Act of May 26, 1981, 67th Leg., R.S., ch. 861, § 1, 1981 Tex. Gen. Laws 3290, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(7) to (9), 1989 Tex. Gen. Laws 1, 114.

Section 11a   provided as follows:

**Injuries constituting total and permanent incapacity**

Sec. 11a.   In cases of the following injuries, the incapacity shall conclusively be held to be total and permanent, to-wit:

(1) The total and permanent loss of the sight of both eyes.

(2) The loss of both feet at or above the ankle.

(3) The loss of both hands at or above the wrist.

(4) A similar loss of one hand and one foot.

(5) An injury to the spine resulting in permanent and complete paralysis of both arms or both legs or of one arm and one leg.

(6) *An injury to the skull resulting in incurable insanity or imbecility.*

Tex.Rev.Civ. Stat. Ann. art. 8306, § 11a (Vernon 1969) (emphasis added) (repealed 1989) (current version at Tex. Lab.Code Ann. § 408.161 (Vernon 1996 & Supp.1998)). Thus, in 1990, under Sections 10(b) and 11a, an employee who was totally and permanently impaired was entitled to receive 401 weeks of benefits; however, if the employee was totally and permanently impaired *and* suffered one of the injuries enumerated under Section 11a, then the employee was entitled to receive lifetime benefits. *See Northwestern Nat'l Cas. Co. v. McCoslin,* 838 S.W.2d 715, 717 (Tex.App.-Waco 1992, writ denied).

There is no dispute that Burnett was injured in the fall, and her "total and permanent incapacity" status is not challenged on appeal. The issue centers around the nature and extent of any injury to her head.

National Union first challenges the legal and factual sufficiency of the evidence that supported the court's findings of fact and conclusions of law, which stated first, that Burnett's depression falls under the reference to "incurable insanity" in Article 8306, § 11a(6); and second, that she suffered an "injury to the skull." National Union further asserts that the legislature did not intend to include "depression" within the ambit of Section 11a(6).

The contested findings of facts state in pertinent part:

4. The Court finds that the head injury that included a blow to the head of ... Burnett resulted in incurable insanity and imbecility.

5. The Court finds that the injuries received by ... Burnett, as a result of a blow to the head was a producing cause of total and permanent incapacity ... as set forth in Art. 8306, § 11a.

6. The Court finds that as a result of the head injury resulting from a blow to the head, ... Burnett suffers from profound depression and incurable psychosis (insanity), as set forth in Art. 8306, § 11a.

In its conclusions of law, the court stated in part:

1. The Court concludes that ... Burnett is entitled to Judgment ... for lifetime benefits in accordance with V.A.T.S., Art. 8306, § 11a.

■■■  Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict on jury questions. *See* W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals,* 24 St. Mary's L.J. 1045, 1145 (1993). Findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's answer. *Id.* Although conclusions of law may not be challenged for factual sufficiency, conclusions drawn from the facts may be reviewed to determine their correctness. *Id.* at 1145–46.

With respect to a "no evidence" point, the reviewing court will consider only the evidence and reasonable inferences that tend to support the findings, while disregarding all

evidence and inferences to the contrary. *Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 593 (Tex.1986). The findings must be upheld if there is more than a scintilla of evidence to support them. *Stedman v. Georgetown Sav. and Loan Ass'n,* 595 S.W.2d 486, 488 (Tex.1979). Evidence is no more than a scintilla when it is so weak that it does nothing more than create a mere surmise or suspicion of the fact's existence. *Brigham v. Brigham,* 863 S.W.2d 761, 762 (Tex.App.-Dallas 1993, writ denied). If the evidence supplies some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact, then there is some evidence, or, in other words, more than a scintilla of evidence. *Kindred v. Con/ Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). When a complete reporter's record appears in the record, as in the present case, the judge's findings of fact are not conclusive. *See Swanson v. Swanson,* 148 Tex. 600, 228 S.W.2d 156, 158 (1950). When a party raises both "no evidence" and "insufficient evidence" points, we rule upon the "no evidence" point first. *Brigham,* 863 S.W.2d at 762.

At trial, evidence was presented showing that there is a direct correlation between a head injury and development of depression and, based on the way she fell, Burnett would have necessarily hit her head. Evidence also showed that the medication for the physical pain she suffered as a result of her fall has contributed to her depression and that her post-concussive contusion is permanent and static. However, the overarching question is not whether Burnett's depression is related to her fall. Rather, it is whether her depression falls under the ambit of "incurable insanity." Because we find no cases discussing the issue of whether depression meets that definition, and because Article 8306 is silent on this issue, we must interpret "incurable insanity."

■ When a statute's language is clear and unambiguous, the legislature's intent is found by the statute's plain and common meaning. *Jeffery v. Walden,* 899 S.W.2d 207, 210 (Tex.App.-Dallas 1993), *rev'd in part on other grounds,* 907 S.W.2d 446 (Tex.1995). However, because Burnett's physicians gen-

erally agreed that the term "insanity" is not a term used in today's medical community, the language is unclear. Thus, we must look for guidance in extrinsic aids and rules of construction. *See Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983); *Jeffery,* 899 S.W.2d at 210. According to dictionary references, the term "psychosis" is now used in lieu of what was formerly termed as "insanity." *See* STEDMAN'S MEDICAL DICTIONARY 876, 1460 (26th ed.1995); DORLAND'S MEDICAL DICTIONARY 840–41, 1385 (27th ed.1988). Dr. Sobiesk, the court-appointed psychiatrist, testified that "insanity" is a serious mental illness demonstrated by psychosis in which the patient is out of touch with reality or suffers hallucinations or delusions. The DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 304 (4th ed. 1994) (DSM–IV) identifies symptoms of psychotic disorder as delusions, hallucinations, disorganized speech, incoherence, or grossly disorganized or catatonic behavior. There is no evidence suggesting that Burnett has suffered from these psychotic disorder symptoms.

Under the dictionary references, Section 11a(6) mandates that Burnett must have been harmed so much by her head injury that she became psychotic. The following evidence shows that she is *not* psychotic:

1. All objective tests conducted had normal results.

2. Burnett is oriented to time and place and has never experienced hallucinations or delusions.

3. She communicates intelligently and answered all questions asked in her deposition.

4. She is not currently institutionalized.

5. Her depression is treatable.

Also, psychosis is distinguishable from depression by its symptoms. As noted above, the DSM–IV states that symptoms of "psychosis" include a loss of one's touch with reality, delusions or hallucinations, grossly impaired judgment or catatonic behavior, and disorganized speech. Conversely, one of Burnett's doctors stated that symptoms of "depression" involve a despondent mood, excessive sleeping, appetite disturbance, hopelessness, and a depressed energy level. Bur-

nett's symptoms fall under this category rather than under "psychosis."

Additionally, the wording of the court's findings of fact appears to distinguish depression from incurable insanity, while making no distinction between incurable insanity and psychosis. In finding of fact number six, the court states that Burnett "suffers from profound depression *and* incurable psychosis (insanity)...." (Emphasis added.)

Although we find no Texas appellate court that has interpreted the statutory language in question, a Virginia court has interpreted the meaning of "incurable imbecility" as contemplated in a similar workers' compensation statute.[1] *See Barnett v. Bromwell, Inc.,* 6 Va.App. 30, 366 S.E.2d 271 (1988). In that case, Harlene Barnett, a sales clerk at a store that sold fireplaces and fireplace equipment, was struck on her head by a fireplace door, rendering her unconscious for three hours. *Id.* 366 S.E.2d at 271. She was diagnosed as having a cerebral concussion, a subarchnoid hemorrhage, a chin laceration, and a left cheek contusion. *Id.* That court applied a nontechnical meaning of the term "imbecility" and determined that it means "an irreversible brain injury which renders the employee permanently unemployable and so affects the non-vocational quality of his life by eliminating his ability to engage in a range of usual cognitive processes...." *Id.* at 274. The Virginia court reasoned that the term "imbecility" was not employed by the legislature in a vacuum, but was used in the context of the functional purpose of the provision, which was to provide lifetime compensation to an injured employee without limiting recovery in cases of loss of specified parts of the body, total paralysis, and severe brain injury. After finding the record replete with evidence of irreversible and severe limitations and reductions of the nonvocational aspect of the quality of her life,[2] that court concluded that Barnett was rendered permanently unemployable as a result of her irreversible brain damage. *Id.*

Notably, however, the Virginia court did not consider whether depression fell within the definitional realm of "incurable insanity or imbecility" because Barnett was not diagnosed with depression.[3] Also, unlike *Barnett,* the present case focuses on the definition of "incurable insanity," not "imbecility."

Notwithstanding these distinctions, Burnett invites this Court to follow the functional, nontechnical approach promoted in *Barnett.* Section 11a states in part that "[t]he above enumeration is not to be taken as exclusive but in all other cases the burden of proof shall be on the claimant to prove that his injuries have resulted in permanent, total incapacity." Burnett points us to two Texas courts that have construed this provision concerning the enumeration not being exclusive and that have extended relief afforded victims of the injuries listed in Section 11a to victims of injuries having the same or similar effect. *City of Del Rio v. Contreras,* 900 S.W.2d 809, 810–11 (Tex.App.-San Antonio 1995, writ denied)(construing Section 11a liberally in favor of claimant who lost use of his

---

1. The provision under consideration by the Virginia court was Virginia Code § 65.1–56(18), which provides:

   The loss of both hands, both arms, both feet, both legs or both eyes, or any two thereof, in the same accident, or an injury for all practical purposes resulting in total paralysis as determined by the Commission based on medical evidence, or an injury to the brain resulting in incurable imbecility or insanity, shall constitute total and permanent incapacity, to be compensated according to the provisions of § 65.1–54.

2. After her accident, Barnett was limited to dressing herself, performing bathroom functions, cleaning house, watching television, and performing one-step tasks such as raking leaves. She was unable to drive, write a coherent sentence, remember numbers with more than three digits, write checks accurately, help her eighth-grade child with homework, remember her doctors' names, follow a recipe, or dial a telephone. *Barnett v. Bromwell, Inc.,* 6 Va.App. 30, 366 S.E.2d 271, 272 (1988).

   Conversely, Latricia Burnett testified that her daily routine can include fixing breakfast, getting her daughter to school, washing a load of clothes, grocery shopping with her husband, and cleaning the living room. Occasionally, she takes a walk and drives her car.

3. Barnett was diagnosed with permanent expressive aphasia (loss of power of spoken or written expression), dyslexia (inability to read understandingly), dysgraphia (inability to write), and hemi-hypoesthesis (abnormally decreased acuteness of sensation on one side of the body). *Barnett,* 366 S.E.2d at 272.

*legs* and finding that Section 11a's "other loss" provision entitled claimant to lifetime benefits even though statute only enumerated lost use of *feet* ); *Texas Gen. Indem. Co. v. Martin,* 836 S.W.2d 636, 638 (Tex.App.-Tyler 1992, no writ). Burnett contends that "loss of use" as stated in Section 11a has been defined to mean that the condition of the injured member is such that the worker cannot get and keep employment requiring the use of that member. *Texas Gen. Indem. Co.,* 836 S.W.2d at 639. Burnett asserts that she clearly falls within this definition because Dr. Bartel testified that she is unemployable because of her condition and because the record contains evidence of incurable, severe depression and cognitive defects in concentration, memory, and judgment. Because she has great difficulty learning new tasks, Burnett believes that she is incapable of adapting to *any* new job. However, her physician's notes stated that there were periods following her accident when she was able to return to work.

*Barnett* and its functional approach is merely persuasive. Even if we agree that Texas should adopt that approach, the degree of Burnett's cognitive and functional incapacity is not nearly as severe or as limited as was Barnett's and, thus, Burnett's depressive condition would still not meet the definition of "incurable insanity."

Instead of Virginia's functional approach, National Union invites this Court to consider the recent decision rendered by the Texas Workers' Compensation Commission in its Commission Appeal No. 961340, at 5–6 (Aug. 21, 1996). That decision interpreted TEX. LAB.CODE ANN. § 408.161, which contains identical language as Article 8306, § 11a. In that appeal, the Commission notes that Webster's Ninth New Collegiate Dictionary (1991) defines the term "imbecile" to mean "a mentally deficient person, especially a feebleminded person having a mental age of three to seven years and requiring supervision in the performance of routine daily tasks or caring for himself." Texas Workers' Compensation Commission Appeal No. 961340, at 6. The appellate panel concluded that the hearing officer's finding that the claimant failed to prove that his skull injury of January 1991 resulted in incurable insanity or imbecility was supported by sufficient evidence and was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 7. Thus, the carrier was not liable for lifetime benefits.

However, unlike the circumstances in Appeal No. 961340, the issue in the instant case does not concern the definition of "imbecility." Rather, as stated, the issue is whether depression falls within the definition of "incurable insanity." There is no evidence of imbecility in the present case and that condition is not in issue.

■ The legislature is never presumed to have done a useless act. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex. 1981). It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. *Id.* Likewise, every word excluded from a statute must also be presumed to have been excluded for a purpose. *Id.* Considering the prevalence of depression in today's society, had the legislature meant to add the term "depression" to the phrase "incurable insanity" as a means of receiving lifetime benefits, it could have easily done so. The "incurable insanity" phrase has survived the statute's numerous amendments since its original enactment in 1917.[4] To include depression within the definition of "incurable insanity" without evidence of psychosis would permit an outcome that is neither reasonable nor feasible, including the outcome of the present case where the evidence indicates that Burnett is not psychotic. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988).[5]

---

4. In its most recent amendment, the legislature changed Section 408.161(a) of the Labor Code so that lifetime benefits were paid to the employee for "a physically traumatic injury to the brain resulting in incurable insanity or imbecility." TEX. LAB.CODE ANN. § 408.161(a) (Vernon Supp. 1998).

5. Section 311.021 of the Government Code provides in part that "[i]n enacting a statute, it is presumed that: ... (3) a just and reasonable result is intended; [and] (4) a result feasible of execution is intended...." TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988).

Further, it should be noted that depression is not analogous to the other injuries listed in Section 11a(1)-(5), which specifically denote total and permanent loss of body parts. Burnett has not lost all, or even a large part, of the use of her brain. She has undergone no brain surgery, and all objective tests have been negative.

■ Conversely, Burnett relies on the primary purpose of the Texas Workers' Compensation Act: to benefit and protect injured employees. *Second Injury Fund of the State of Texas v. Johnson,* 678 S.W.2d 225, 228 (Tex.App.-Austin 1984), *rev'd on other grounds,* 688 S.W.2d 107 (Tex.1985). Workers' compensation laws should be liberally construed to confer benefits upon injured workers. *Lujan v. Houston Gen. Ins. Co.,* 756 S.W.2d 295, 297 (Tex.1988); *Apresa v. Montfort Ins. Co.,* 932 S.W.2d 246, 253 (Tex. App.-El Paso 1996, no writ). Thus, because Section 11a is a part of the Texas Workers' Compensation Act, it should be liberally construed in accordance with the Act's purpose.

Burnett asserts that, based on the revisor's notes to TEX. LAB.CODE ANN. § 408.161, and recognizing that, when the meaning of an existing law is uncertain, the legislature's later interpretation is highly persuasive,[6] the legislature intended that the term "insanity" means "mental illness." "The revised law substitutes the term 'mental illness ... ' because [insanity and mental illness] are synonymous and the latter is more commonly used." TEX. LAB.CODE ANN. § 408.161 re-

visor's note. Although Burnett correctly states in her brief that Dr. Sobiesk testified that depression can be a psychotic mental illness, a complete reading of his testimony reveals that she displayed no psychotic symptoms.

■ Although there is overwhelming evidence that Burnett suffers from severe depression, stemming from the injury she received in the scope of her employment, and that her injury has resulted in total and permanent incapacity, we find there is *no* evidence that she is psychotic or "incurably insane."

Because we sustain National Union's no evidence point, we need not address its factual sufficiency point or its alternative assertion about "injury to the skull."

The judgment awarding lifetime benefits is reversed, and because her "total and permanent incapacity" has not been otherwise challenged in this appeal, judgment is rendered for Burnett affirming the award by the Texas Workers' Compensation Commission of $156.92 per week for 401 weeks, payable in one lump sum.

---

6. *See Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.,* 917 S.W.2d 19, 21 (Tex.1996).