COMERICA BANK—TEXAS, as Trustee of the Gayl Hall Bradfield Trust, Appellant,

v.

TEXAS COMMERCE BANK NATIONAL ASSOCIATION, as Executor of the Estate of Gayl Hall Bradfield, Deceased, Appellee.

No. 06–98–00170–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 26, 1999.

Decided Sept. 23, 1999.

R.W. Calloway, Calloway, Norris & Burdette, Dallas, for appellant.

Royce Jackson Watts, Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

This is an action brought by Chase Bank of Texas ("Chase"), the executor of the estate of Gayl Hall Bradfield, against Comerica Bank Texas ("Comerica"), trustee of the Gayl Hall Bradfield Trust, to set aside a transfer of assets to the Gayl Hall Bradfield Trust and to impose a constructive trust on the transferred assets. Comerica appeals from the trial court's granting of partial summary judgment in favor of Chase.

On September 23, 1986, Gayl Hall Bradfield signed an instrument entitled "General Power of Attorney" naming Robert N. Virden as her attorney-in-fact. The General Power of Attorney provided in relevant part:

Notwithstanding the other provisions of this general power of attorney, the rights, power and authority of my attor-

ney shall commence only upon my disability as hereinafter defined and shall remain in full force thereafter until said disability is terminated. This general power of attorney shall not terminate on my disability or incompetency. Disability shall be defined as a substantial impairment of my ability to care for my property by reason of age, illness, infirmity, mental weakness, intemperance and/or addiction to drugs.

On January 11, 1991, Bradfield established the Gayl Hall Bradfield Trust. The trust contained certain assets held for the benefit of Bradfield. The trust provided that on Bradfield's death, the assets be distributed to identified institutions and individuals. In 1993, Bradfield amended the trust to add additional assets.

On August 19, 1991, Bradfield made a holographic will, which named Texas Commerce Bank as executor of her estate. After this lawsuit was filed, Texas Commerce Bank became Chase Bank of Texas. The holographic will left by Gayl Bradfield essentially speaks to matters other than the disposition of the property, but the trust specifically spells out the beneficiaries.

In 1995, Bradfield became incapacitated. After her incapacity, Virden, acting as Bradfield's attorney-in-fact, transferred to the trust certain assets held by Bradfield, individually, and assets payable to Bradfield, individually. Bradfield died on January 12, 1997.

Chase filed suit against Comerica, as trustee of the trust, for a declaratory judgment and to impose a constructive trust on the assets Virden transferred to the trust. Chase also filed a motion for summary judgment contending that the power of attorney did not create a valid agency relationship, or, in the alternative, that the power of attorney did not authorize Virden to convey Bradfield's assets to the trust. In its motion, Chase argued that the power of attorney Bradfield executed to Virden was a "springing durable power of attor-

ney" that was not authorized by the Texas Probate Code in 1986, when it was executed. Chase also requested in its motion for summary judgment that a constructive trust be imposed on the assets transferred by Virden. The trial court granted Chase's motion for partial summary judgment, and the parties obtained an agreed order to sever Chase's remaining claims.

■ Comerica contends that the durable power of attorney from Bradfield to Virden in 1986 was valid. Specifically, it contends that even though the Probate Code did not expressly provide for a springing power of attorney in 1986, it did not expressly disallow powers of attorney of that kind. Comerica argues that no distinction exists in the 1986 Probate Code between durable powers of attorney that are effective immediately and those that are effective only when the principal becomes incapacitated.

■ A power of attorney is a written instrument by which one person, the principal, appoints another person, the attorney-in-fact, as agent and confers on the attorney-in-fact the authority to perform specified acts on behalf of the principal. *See Olive–Sternenberg Lumber Co. v. Gordon,* 143 S.W.2d 694, 698 (Tex.Civ.App.-Beaumont 1940), *rev'd on other grounds,* 138 Tex. 459, 159 S.W.2d 845 (1942).

In 1972, the Legislature enacted Section 36A of the Probate Code allowing durable powers of attorney. Section 36A provided in relevant part:

> When a principal designates another his attorney in fact or agent by power of attorney in writing and the writing contains the words "this power of attorney shall not terminate on disability of the principal" or similar words showing the intent of the principal that the power shall not terminate on his disability, then the powers of the attorney in fact or agent shall be exercisable by him on behalf of the principal notwithstanding later disability or incompetence of the principal.

Act of May 5, 1971, 62nd Leg., R.S., ch. 173, § 3, 1971 Tex. Gen. Laws 971, *amended by* Act of May 29, 1989, 71st Leg., R.S., ch. 404, § 1, 1989 Tex. Gen. Laws 1550, *repealed and codified by* Act of April 15, 1993, 73rd Leg., R.S., ch. 49, § 2, 1993 Tex. Gen. Laws 112 (current version at TEX. PROB.CODE ANN. § 482 (Vernon Supp. 1999)). This section of the Probate Code authorizes a power of attorney to remain in force in the event the principal becomes incapacitated. Section 36A does not expressly provide that a power of attorney may become effective only in the event the principal becomes incapacitated.

In 1993, the Texas Legislature passed the Durable Power of Attorney Act, authorizing a springing durable power of attorney. TEX. PROB.CODE ANN. § 482 (Vernon Supp.1999). The Code now provides that a power of attorney may contain a provision that "this power of attorney is not affected by subsequent disability or incapacity of the principal," or "this power of attorney becomes effective on the disability or incapacity of the principal." *Id.*

Historically, an agency authority called power of attorney existed only when the principal was capable of acting on his or her own behalf. At common law, an agency relationship, including one created by power of attorney, terminated upon the incapacity of the principal. *Harrington v. Bailey,* 351 S.W.2d 946, 948 (Tex.Civ.App.-Waco 1961, no writ). Tracing the cases cited in the *Harrington* opinion and other later Texas cases back to the authority upon which they were based, the reason given for not allowing the power of attorney to continue to exist was because the statutes provided for the appointment of a guardian when a person did not have the capacity to handle his own estate. *See Texas & P. Ry. Co. v. Bailey,* 83 Tex. 19, 18 S.W. 481 (1892); *Renfro v. City of Waco,* 33 S.W. 766, 767 (Tex.Civ.App.1896, no writ). In turn, when a person died, the executor or administrator of the estate was designated by the Probate Code to handle the affairs of the estate. These provisions

in the law precluded the continuation of the authority of an agent after disability or death.

The passage of Section 36A of the Probate Code of 1972 allowed for the first time a power of attorney to be recognized and legally effected even during the disability of the principal. This altered significantly the previous law that had required that an insane or incompetent person was to have a guardian under the supervision of the court.[1] This statutory provision left no question that if the proper language was contained in a power of attorney, the power of attorney could continue during the disability pursuant to the terms of agency authority specifically granted by the principal. Because there had been no case in point and because the language in the statute speaks in terms of the power not terminating on disability, the later clarification that it can take effect upon disability removed any doubt on that question. Because this particular portion of Section 36A placed in the Code in 1972 had never been interpreted, it was understandable that the Legislature wanted to clear up this ambiguity so that people could plan for the future application of such documents to be enforced without the fear that there might be a contrary interpretation of this provision.

In the present case, however, this Court should apply the standard of construction to the power of attorney that would comport with legality and would presume the parties intended to obey the law. *See Gonzalez v. Gainan's Chevrolet City, Inc.,* 690 S.W.2d 885 (Tex.1985).

There is language in the general power of attorney in this case that suggests that its authorization is being made before the disability: "This general power of attorney shall not terminate on my disability or incompetency."

On first blush, that provision seems inconsistent with the opening sentence: "Notwithstanding the other provisions of this general power of attorney, the rights, power and authority of my attorney shall commence only upon my disability as hereinafter defined and shall remain in full force thereafter until said disability is terminated."

The instrument in question had the legal effect at the time of the signing of creating a general power of attorney to commence in the future. This would be no different from a power of attorney that was to begin when the principal left for Europe, when the principal purchased a new business, or some similar future event. The difference is the authorization of the agency was triggered by a future event other than the disability of the principal. We have found no new cases that prohibit the execution of a binding document that would create an agency to commence at some point in the future.

There is no contention that Gayl Bradfield was not competent at the time she executed the power of attorney. A hypertechnical application of the statute would allow such an interest to be in effect if it had commenced one minute before her disability, but it could not begin at the moment her disability began.

A holding to the contrary would defeat the intent of the principal, as well as the spirit of the law, which was to permit powers of attorney to continue to exist if that was the intent of the principal. This designation of a power of attorney existed prior to the disability and was signed by the principal prior to the disability, and the legal effect of this instrument did not terminate upon the disability even though the rights, power, and authority under the

---

1. 42A Tex. Jur.3d *Guardianship and Conservatorship* § 531 observation (1995), quotes the "Texas Family Law Service News Alert" as making the observation that the durable power of attorney was becoming an increasingly popular method of estate management, because of its flexibility, low cost, and minimal judicial intrusion, and that such a power can be drafted to spring into effect at a later date.

power of attorney did not commence until the disability began.

We reverse and remand this cause to the trial court for further proceedings consistent with this opinion.

Dissenting by Chief Justice
CORNELIUS.

I respectfully dissent.

When the Legislature was considering Section 482 of the Probate Code, testimony was presented in committee hearings concerning the need for a legislative enactment permitting springing powers of attorney. This testimony supports the conclusion that the bill was introducing a new feature to the durable power of attorney in Texas. Al Golden, on behalf of the Real Estate, Probate and Trust Law Section of the State Bar of Texas, testified before the Jurisprudence Committee of the Texas Senate about the springing power of attorney. He testified as follows:

> This bill [S.B. 176] also provides something that we have never had in Texas law, but is available in most states and that's what's called a springing power of attorney. My experience in twenty-five years of practice in this area is that most people like to give powers of attorney out, but they don't really want them to become effective until they become disabled. Under current Texas law you cannot do that. This bill would permit you to write a power of attorney that would not become effective until disabled.

*Durable Power of Attorney Act: Hearing on Tex. S.B. 176 Before the Senate Jurisprudence Committee,* 73rd Leg., R.S. (Feb. 9, 1993). Additionally, Golden testified before the Texas House of Representatives Judicial Affairs Committee as follows:

> This [S.B. 176] does several things to change the law in Texas.... Third, one of the things that many of my elderly clients ask for is that they want to give a power of attorney, but they don't want that power to be effective unless and until they are disabled. Under current Texas law you cannot give that kind of power of attorney. It must be, it's effective when given even though the principal has no incapacity. Under this statute, the power of attorney can be specifically drafted to take effect only on the disability or incapacity of the principal, thereby again meeting a need that many of our citizens have requested.

*Durable Power of Attorney Act: Hearing on Tex. S.B. 176 Before the House Judicial Affairs Committee,* 73rd Leg., R.S. (Feb. 23, 1993).

Senator Parker, the sponsor of Senate Bill 176, also addressed the intent of the Durable Power of Attorney Act. He stated on the floor of the Senate:

> What this Bill [S.B. 176] will do, it brings our Probate Code in line with the Uniform Probate Code of most other states.... The way it works now, the person receiving it [power of attorney] can use it whether you've become disabled or not. This takes care of that and puts us in line with about thirty-five other states.

*Debate on Tex. S.B. 176 on the Floor of the Senate,* 73rd Leg., R.S. (Feb. 18, 1993).

I believe the legislative history indicates that the Legislature intended a change in the durable power of attorney law when it enacted the Durable Power of Attorney Act in 1993. The general rule of statutory construction is that a legislative amendment is presumed to change the law, and the courts should adopt a construction that does not render an amendment useless. *See Ex parte Trahan,* 591 S.W.2d 837, 842 (Tex.Crim.App.1979); *see also National Union Fire Ins. Co. v. Burnett,* 968 S.W.2d 950, 956 (Tex.App.-Texarkana 1998, no pet.); *Texas Commerce Bank Nat'l Ass'n v. Geary,* 938 S.W.2d 205, 211 (Tex.App.-Dallas 1997), *rev'd on other grounds,* 967 S.W.2d 836 (Tex.1998). We

presume that every word of a statute was used for a purpose and, likewise, that every word excluded from a statute was excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex. 1981); *National Union Fire Ins. Co. v. Burnett,* 968 S.W.2d 950 (Tex.App.–Texarkana 1998). Before 1993, the Probate Code did not expressly allow for a springing durable power of attorney. In 1993, the Legislature amended the Probate Code to expressly authorize a springing power of attorney. We should presume that the Legislature intended to change the law in 1993. Additionally, the absence of any language permitting a springing power of attorney before 1993 indicates that the Legislature did not intend to authorize a springing power of attorney in Texas at that time. Thus, I would hold that the 1972 and 1989 versions of the durable power of attorney statute did not authorize a springing power of attorney.

We must decide whether the 1993 Durable Power of Attorney Act may be applied to a power of attorney executed in 1986. I conclude, from the clear language in the legislative acts of 1989 and 1993 amending and codifying the durable power of attorney statutes, that a power of attorney created under the provisions of a former statute continues to be governed by the law in effect when the power of attorney was executed. Act of May 29, 1989, 71st Leg., R.S., ch. 404, § 2, 1989 Tex. Gen. Laws 1551; Act of April 15, 1993, 73rd Leg., R.S., ch. 49, § 2, 1993 Tex. Gen. Laws 112. In 1993, the Legislature provided, "Section 36A, Probate Code is repealed. A power of attorney executed in compliance with that section before the effective date of this Act is valid according to the terms of that section as it existed at the time of the execution, and that section is continued in effect for that purpose." Act of April 15, 1993, 73rd Leg., R.S., ch. 49, § 2, 1993 Tex. Gen. Laws 112.

Accordingly, I would hold that Bradfield's 1986 general power of attorney is to be construed under the version of the Probate Code in effect at the time it was executed. As stated above, the version of the Probate Code in effect in 1986 did not authorize a springing power of attorney. The trial court correctly found that, as a matter of law, Virden was not authorized to act as Bradfield's attorney-in-fact because the power of attorney was invalid and ineffectual. Because Virden was not authorized, as the attorney-in-fact, to convey any assets to the trust, the trial court properly imposed a constructive trust on the assets Virden conveyed to the trust.

Comerica argues that, if we find the springing power of attorney invalid, we should disregard the provisions that render it invalid and enforce the power of attorney as an ordinary durable power of attorney. The majority opinion essentially accepts this view. I do not believe we can justify such a construction because it would militate against Bradfield's express intention. Although the majority disputes this, an acceptance of such a construction would result in the power of attorney being effective immediately on its execution and continuing in effect after Bradfield's incapacity. The majority claims to effectuate Bradfield's intention, but the construction they give to the instrument is absolutely contrary to Bradfield's obvious intention, as indicated by the express language Bradfield used in the instrument. The provisions of the power of attorney conclusively indicate that her intention was that the power of attorney would not take effect *unless* and *until* she became incapacitated.

I do not disagree that a person can create an ordinary agency to begin only on the occurrence of a future contingency, if the instrument creating the agency expressly and clearly contains language to that effect. But what we have here is not an ordinary agency, but a special kind of power of attorney that was not authorized by law when it was executed. Because it was not authorized by law at the time it was executed, it is completely ineffectual.

For these reasons, I would affirm the judgment of the trial court.